IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

LUFKIN DIVISION

| | | |
|---|---|---|
| HAROLD LAIRD | § | |
| v. | § | CIVIL ACTION NO. 9:05cv200 |
| CLIFTON MATTOX, ET AL. | § | |

MEMORANDUM OPINION AND ORDER OF DISMISSAL

The Plaintiff Harold Laird, an inmate of the Texas Department of Criminal Justice, Correctional Institutions Division proceeding *pro se*, filed this civil rights lawsuit under 42 U.S.C. §1983 complaining of alleged violations of his constitutional rights during his confinement in the prison. The parties have consented to allow the undersigned United States Magistrate Judge to enter final judgment in this proceeding. 28 U.S.C. §636(c).

An evidentiary hearing was conducted on March 21, 2006, pursuant to Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985). At this hearing, Laird testified that he arrived at the Gib Lewis Unit in November of 2003. He filed some grievances against Captain Mattox, and a short time later, two guards, Walton and Bass, came to his cell. They put him in restraints and took him out into the hallway. He was placed in a chair, his hands forced open, and he was made to get a haircut.

Laird explained that he was taken out of his cell so that he could be assaulted, not for a haircut. He said that he was told that he was going to go talk to Captain Mattox, but he refused, saying that he "had nothing to say." Captain Powell came to his cell with some gas and told him that force would be used if needed.

After he was placed in the chair, Laird said, he could see Bass and Walton standing behind him. He asked the barber not to shave him because he had a court hearing coming up, but Bass signaled to the barber to shave him. Laird leaned forward twice, to avoid being shaved, and Bass slammed him to the floor. Other officers, including Powell and Mattox, ran over, took the chair, and

1

put it in a closet. Laird was punched in the face and his neck and arms were twisted. His head was shaved, apparently in the closet, and he was taken back into the hallway.

At that point, Laird said, he saw Lt. Boykin in the hall, "looking around." Boykin told the officers to "come on," and Mattox and Powell got in the elevator and told him that "you know what to do." Boykin took Laird down the hall and said "let's do it right here." As soon as he said this, Laird was assaulted again.

A video camera was brought, but when Laird started to make a statement, it was turned off. Bass choked him and said that he would make it so that Laird could not talk. Laird was put in a cell for handicapped inmates and given a statement form but no pen. The camera was shut off and Boykin told him that "if you ever speak out again, I'll break you like a pretzel and not feed you." Laird was left in that cell until about 5:30 p.m.

At that point, he said, he was taken out and the rest of his head was shaved. Laird was then put back in the cell with nothing, and left there for some nine to 11 days without clothes or property.

Laird explained that a week before this incident, Captain Mattox brought him into his office. At that time, Laird said, he was a Level 1 inmate, but was housed with Level 3 inmates. He said that he was letting the Level 3 inmates put money on his, Laird's account so that Laird could buy commissary items for them, even though this was against the rules. Mattox told him that other inmates were going to file extortion charges on him, but the allegations of extortion were not true. He added that Mattox had threatened him earlier. Laird said that he had previously escaped from the prison, which was an "embarrassment" to the prison. He explained that the extra security on his cell door was not because of his escape history, but so that guards could not get into his cell.

In reviewing the individuals named as defendants in the case, Laird said that Captain Mattox had initiated the incident, and that he was not sure who had hit him while he was in the closet, but it could have been Mattox or Powell. Laird also observed that Mattox and Powell could have stopped the assault but did not, even if they did not personally strike him.

Laird said that Bass and Walton did the initial "slamming" and Walton put his knee in Laird's back when Laird was in the closet. He said that Officer Glenn was standing in the hall when the use of force began and "jumped into the middle of it." He said that Glenn was part of the group who used excessive force on him.

Laird stated that Lt. Boykin was standing as a "lookout" while he was getting shaved in the closet. He noted that Boykin also could have intervened but did not. He said that he asked to speak to Major Helm, but Helm said that he "did not want to hear it."

While he was in the holding cell, Laird said, he stopped an investigator named Cook and told him what had happened, and Cook said to write an I-60 inmate request form about it. Laird did so, but nothing was done. He then filed a grievance, and was told that the Office of the Inspector General had said that there was no wrongdoing. Laird contended that Cook had "a duty to investigate" but did not.

Laird stated that he was also complaining that he had been placed in a strip cell, which he said was the fault of Helm and Mattox, inasmuch as they were in positions of authority. He said that inmates can be placed in property restrictions for up to 72 hours, after which they must be reviewed, but that he never got any documentation and was left on restrictions for more than 72 hours.

The evidence offered at the <u>Spears</u> hearing showed that Laird had exhausted his administrative remedies concerning his claim of the use of force, but that he had not done so with respect to his claim about being placed in the strip cell. Nor had Laird exhausted his administrative remedies with respect to his claim that Cook failed to investigate his complaint, or any claims against Major Helms.

<u>Legal Standards and Analysis</u>

Prior to the passage of the Prison Litigation Reform Act, Public Law 104-134 (April 26, 1996), lawsuits brought by inmates who had not exhausted their administrative remedies would be stayed for a period of up to 180 days in order to permit exhaustion. 42 U.S.C. §1997e(a)(1). This provision has now been deleted from the law. As amended, 42 U.S.C. §1997e(a) reads as follows:

> No action shall be brought with respect to prison conditions under Section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

Title 42 U.S.C., Section 1997e(a), as amended by Public Law 104-134, Title I, sec. 101, April 26, 1996, *renumbered as* Title I, Public Law 104-140, sec. 1 (May 2, 1996, 110 Stat. 1327). No statutory basis now exists for placing a stay on the action; instead, completion of the exhaustion process is a mandatory prerequisite for filing the lawsuit.

In other words, the exhaustion process must be completed before the federal lawsuit is filed; even complete exhaustion following the filing of the lawsuit is not sufficient. Underwood v. Wilson, 151 F.3d 292, 296 (5th Cir. 1998). In that case, the Fifth Circuit stated as follows:

> By choosing to file and pursue his suit prior to exhausting administrative remedies as required, Underwood sought relief to which he was not entitled--that is, federal court intervention in prison affairs prior to the prison having had the opportunity to address the complaint within its grievance procedures. We therefore affirm the district court's order dismissing Underwood's action with prejudice for purposes of proceeding IFP.

Underwood, 151 F.3d at 296.

The Sixth, Eighth and Tenth Circuits have held that when a prisoner fails to exhaust his administrative remedies before filing a civil rights complaint in federal court, or only partially exhausts administrative remedies, dismissal of the complaint *in toto* is appropriate. Bey v. Johnson, 407 F.3d 801, 809 (6th Cir. 2005); Graves v. Norris, 218 F.3d 884, 886 (8th Cir. 2000); Ross v. City of Bernalillo, 365 F.3d 1181, 1188-89 (10th Cir. 2004).[1]

---

[1] The Second Circuit has held that a "total exhaustion" rule is not required. Ortiz v. McBride, 380 F.3d 649 (2nd Cir. 2004). However, that case focuses on policy considerations and distinguishing prison administrative-remedy exhaustion from exhaustion in the habeas context, and does not address either the plain language of the statute or the intent of Congress concerning the total exhaustion rule. In addition, one case from the Eighth Circuit holds that it may be proper to allow an inmate to amend his complaint to dismiss all non-exhausted claims. Kozohorsky v. Harmon, 332 F.3d 1141, 1144 (8th Cir. 2005). It is not clear that this rule is consistently followed; other cases from the Eighth Circuit dismiss lawsuits not fully exhausted without prejudice, with no mention of an option to amend. *See, e.g.*, Harris v. Kemna, 155 Fed.Appx. 941 (8th Cir. 2005) (unpublished); Dodson v. Norris, 2006 WL 399108 (8th Cir., Feb. 22, 2006) (unpublished).

The plain language of the statute confirms this reading; as noted above, 42 U.S.C. §1997e(a) says that "No action shall be brought with respect to prison conditions under Section 1983 of this title ... by a prisoner confined in any jail, prison, or other correctional facility until *such administrative remedies are available* have been exhausted." (emphasis added) The Fifth Circuit has taken a strict approach to the exhaustion requirement. *See* Richardson v. Spurlock, 260 F.3d 495, 499 (5th Cir. 2001); Wright v. Hollingsworth, 260 F.3d 357, 358 (5th Cir. 2001).[2]

In this case, Laird has not exhausted such administrative remedies as are available to him, because he raises claims which the evidence shows that he did not exhaust. Laird attaches copies of his grievances to his complaint, showing that he has exhausted his use of force claims, but neither alleges nor shows that he has exhausted his administrative remedies on his claims concerning the strip cell, Cook's failure to investigate, or the claims against Major Helms.

The statute clearly provides that "*no action shall be brought*" until such administrative remedies as are available are exhausted. *See generally* Porter v. Nussle, 534 U.S. 516, 524, 123 S.Ct. 983, 988 (2002) (noting that all available remedies must be exhausted); Wright v. Hollingsworth, 260 F.3d at 358 (inmate required to exhaust available remedies, "whatever they may be").

For this reason, this Court agrees with the Sixth, Eighth, and Tenth Circuits that under the plain language of the statute, dismissal of the lawsuit *in toto* for failure to exhaust is appropriate. Significantly, the statute does not say that no *claim* which has not been exhausted may be brought, but that no *action* shall be brought until such administrative remedies as are available have been exhausted. The term "action" is all-encompassing, incorporating the whole cause, not merely the "complaint." *See* Whitaker v. City of Houston, 963 F.2d 831, 934 (5th Cir. 1992) (drawing a distinction between dismissal of the action and dismissal of the complaint); *cf.* Rule 2, Fed. R. Civ. P. (stating that "there shall be one form of action to be known as a "civil action.") Thus, the

---

[2] In Johnson v. Johnson, 385 F.3d 503 (5th Cir. 2004), the Fifth Circuit expressly declined to consider the propriety of a complete exhaustion rule, observing that the defendants in that case had not argued in favor of such a rule. Johnson, 385 F.3d at 523 n.15.

statutory language that "no action shall be brought ... until such administrative remedies as are available have been exhausted" plainly means that the lawsuit itself cannot be filed until all available administrative remedies have been exhausted. *See also* Ross, 365 F.3d at 1190 (noting that the statute prohibits the filing of "actions," as opposed to preventing the filing of a "claim.")

In saying that "no action shall be brought" prior to exhaustion of administrative remedies, Congress necessarily intended that all available administrative remedies must be exhausted before the lawsuit can be filed at all. *See* statement of Sen. Abraham, April 19, 1996, explaining that under the law, state prisoners would have to exhaust "all administrative remedies" before filing suit in federal court (142 Cong. Rec. S3703-01, April 19, 1996); Joint Explanatory Statement by the House-Senate Committee of Conference, 141 Cong. Rec. H13874-01, at H13928 (December 4, 1995) (explaining that 42 U.S.C. §1997a is being amended "to require that administrative remedies be exhausted prior to any prison conditions action being brought under any federal law by an inmate in federal court."). The Report of the Activities of the House Committee on the Judiciary, HR. Report 104-879 (January 2, 1997), p. 183, notes that this provision of the law "requires prisoners to exhaust the administrative remedies established by the corrections system before they may file a lawsuit in federal court." *See also* Underwood v. Wilson, 151 F.3d at 295 (noting Congressional intent of statute).

Hence, the clear purpose of this law was to require that state prisoners proceed through all available administrative channels of relief before they could bring their lawsuit in federal court. The logical meaning of this requirement is that all administrative channels of relief must be pursued, on all claims which the prisoner wishes to raise, before he may file his lawsuit in federal court. It should be noted that the very term "exhaustion," in the prisoner civil rights context, is defined by the Fifth Circuit as "to take *complete* advantage of." Underwood, 151 F.3rd at 295 (emphasis added).

A similar rule exists in the context of habeas corpus. The Fifth Circuit has specifically held that a habeas corpus petition must be dismissed if any issue has not been exhausted in the state courts. Thomas v. Collins, 919 F.2d 333 (5th Cir. 1990), *reh. den.* The reason for this rule is to

allow the state courts the opportunity to rule upon an issue before it is adjudicated by the federal courts. *See generally* Rose v. Lundy, 455 U.S. 509 (1982). Although the question of state court rulings does not present itself in this issue, the underlying reasoning remains the same; where problems exist within the state prison, the state authorities should be given the first opportunity to review these problems and take appropriate action where necessary. This is the basis for the administrative exhaustion requirement, and it therefore follows that all issues to be raised in federal court should first be presented to the state administrative authorities for consideration and possible resolution. Underwood, 151 F.2d at 296 (noting that federal court intervention in prison affairs prior to the prison having had the opportunity to address the complaint within its grievances procedures is relief to which the prisoner is not entitled).

The present case is an action brought with respect to prison conditions under Section 1983, by a prisoner confined in a correctional facility. The prison records show that this action was brought at a time when such administrative remedies as were available to Laird for claims that he raised as part of his action were not exhausted. Consequently, he is in violation of 42 U.S.C. §1997, which explicitly provides that no action shall be brought until all administrative remedies as are available have been exhausted. Porter v. Nussle, 534 U.S. at 524, 123 S.Ct. at 88; Wright v. Hollingsworth, 260 F.3d at 358. Because Laird filed a lawsuit seeking federal court intervention where the state prison officials had not had the opportunity to address all of his claims, his lawsuit may be dismissed. Underwood, 151 F.3d at 296.

The Fifth Circuit has held that dismissal with prejudice is appropriate where a lawsuit is filed prior to the exhaustion of administrative remedies. Underwood, 151 F.3d at 296. This Court has concluded that under the complete exhaustion rule, such dismissal with prejudice is appropriate only where *none* of the available administrative remedies have been exhausted. In a case such as the present one, where some but not all administrative remedies have been exhausted, the proper course is a dismissal of the lawsuit without prejudice, the position taken by the Sixth Circuit in Bey and by

the Eighth Circuit in <u>Harris</u>.³ This preserves the Congressional intent of the statute, which is to require that all available administrative remedies be exhausted before the action is filed, while allowing the plaintiff either to refile his lawsuit raising only the exhausted claims, or to return to the prison administrative procedures and exhaust the remainder of his claims, refiling his lawsuit after all available administrative remedies have been exhausted. Because Laird has exhausted some but not all of his available administrative remedies, the proper course in this case is to dismiss the lawsuit without prejudice, and it is accordingly

ORDERED that the above-styled civil action be and hereby is DISMISSED without prejudice for failure to exhaust administrative remedies. 42 U.S.C. §1997e(a). The statute of limitations on Laird's claims shall be and hereby is TOLLED from the date of the filing of this lawsuit until 60 days after the date of entry of final judgment. *See* <u>Mills v. Criminal District Court No. 3</u>, 837 F.2d 677 (5th Cir. 1988); <u>Rodriguez v. Holmes</u>, 963 F.2d 799 (5th Cir. 1992). Finally, it is

ORDERED that any and all motions which may be pending in this action are hereby DENIED.

So **ORDERED** and **SIGNED** this **3** day of **May, 2006.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE

---

³*See also* <u>Johnson v. Jones</u>, 340 F.3d 624, 627 (8th Cir. 2003) (instructing district courts that when a lawsuit is filed before complete exhaustion has been done, but the claims are subsequently exhausted, dismissal is required under Section 1997e(a). The Fifth Circuit has similarly held that complete exhaustion after the lawsuit is filed is not sufficient to satisfy the statutory requirements. <u>Underwood v. Wilson</u>, 151 F.3d at 296.